OPINION
{¶ 1} Plaintiff-appellant, Mary Hedges, appeals from the judgment of the Franklin County Court of Common Pleas granting summary judgment to defendant-appellee, Nationwide Mutual Insurance Company.
 {¶ 2} The facts and procedural history relevant to this case are as follows. On January 1, 2001, Bruce Hedges was fatally injured when the bicycle he was riding was struck by a truck operated by John Leasure, Jr., an underinsured motorist. Plaintiff is the decedent's mother. Plaintiff was not involved in the accident, nor did she sustain bodily injury as a result of the accident. At the time of the accident, plaintiff was the named insured under two policies of insurance issued by defendant — an automobile liability policy and an umbrella policy. Both policies also provided uninsured/underinsured motorist ("UM/UIM") coverage. It is undisputed that the umbrella policy applied only to losses payable by the insured's underlying automobile coverage. The automobile policy provided, in relevant part, that defendant would pay "compensatory damages, including derivative claims, which are due by law to [the insured] or a relative from the owner or driver of an uninsured[/underinsured] motor vehicle because of bodily injury suffered by [the insured] or a relative." "Relative" was defined as "one who lives regularly in [the insured's] household who is related to [the insured] by blood, marriage or adoption." The parties agreed that the decedent was not a named insured in plaintiff's policies and did not live in plaintiff's household.
 {¶ 3} Plaintiff filed a UM/UIM claim with defendant for damages arising out of her son's death. After defendant denied the claim, plaintiff filed a complaint against defendant seeking, inter alia, a declaration of her rights under the policies.
 {¶ 4} Both parties filed motions for summary judgment. In her motion, plaintiff contended that she was entitled to UM/UIM coverage under the policies pursuant to the Ohio Supreme Court's decision in Moore v. State Farm Auto. Mut. Ins. Co. (2000),88 Ohio St.3d 27, which held that R.C. 3937.18(A)(1), as amended by S.B. No. 20, effective October 20, 1994, precludes an insurer from limiting UM/UIM coverage in such a way that an insured must suffer bodily injury, sickness, or disease in order to recover damages from the insurer. Id. at syllabus. Plaintiff argued that, pursuant to Moore, the policy language purporting to limit UM/UIM coverage in such a way that an insured must suffer bodily injury in order to recover violated R.C. 3937.18(A)(1).
 {¶ 5} Defendant argued that Moore was inapplicable because it interpreted a different version of R.C. 3937.18(A)(1) than that applicable to the instant case. Defendant maintained that the applicable version of R.C. 3937.18(A)(1), as amended by H.B. No. 261, effective September 3, 1997, effectively permits an insurer to limit UM/UIM coverage in such a way that an insured must suffer bodily injury in order to recover from the insurer. Accordingly, defendant argued that the policy language precluded plaintiff from recovering UM/UIM benefits. Defendant asserted that plaintiff's claim did not satisfy the policy provision because the insured, plaintiff, did not sustain bodily injury as a result of the accident, and the decedent was neither a named insured under the policy nor a "resident relative" as defined in the policy.
 {¶ 6} The trial court granted summary judgment to defendant, expressly finding Moore inapplicable to the H.B. No. 261 version of R.C. 3937.18 and implicitly finding that the amended version of the statute did not preclude insurers from limiting UM/UIM coverage to claims arising from bodily injury sustained by an insured. Having so found, the court determined that the policy provision at issue unambiguously restricted UM/UIM coverage to claims arising from bodily injury sustained by an insured or a "resident relative." The trial court concluded that plaintiff's claim did not satisfy the policy provision because the insured, plaintiff, did not sustain bodily injury as a result of the accident, and the decedent was neither a named insured under the policy nor a "resident relative" as defined in the policy. It is from this judgment that plaintiff appeals and presents a single assignment of error for our review:
THE TRIAL COURT ERRED IN FINDING Moore v. State Farm Auto.Mut. Ins. Co. (2000), 88 Ohio St.3d 27, NOT APPLICABLE TO THE FACTS AND CIRCUMSTANCES OF THIS CASE.
 {¶ 7} Because plaintiff's assignment of error arises out of the trial court's ruling on the parties' motions for summary judgment, we review the disposition independently and without deference to the trial court's determination. Brown v. SciotoCty. Bd. of Commrs. (1993), 87 Ohio App.3d 704, 711. In conducting our review, we apply the same standard as that employed by the trial court. Maust v. Bank One, Columbus, N.A.
(1992), 83 Ohio App.3d 103, 107. Summary judgment should be granted where the evidence demonstrates that: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can come to but one conclusion, and that conclusion is adverse to the non-moving party. Civ.R. 56(C);State ex rel. Grady v. State Emp. Relations Bd. (1997),78 Ohio St.3d 181, 183.
 {¶ 8} We begin our discussion of the issue raised herein with an analysis of the Ohio Supreme Court's decision in Sexton v.State Farm Mut. Auto. Ins. Co. (1982), 69 Ohio St.2d 431. In that case, the 17-year-old daughter of Gerald Sexton was killed by an uninsured motorist. Sexton was insured under an automobile liability policy which included UM coverage. The daughter was not an insured under the policy and did not live with her father at the time of the accident. Pursuant to a child support order, Sexton paid medical and funeral expenses arising out of his daughter's injuries and death. Sexton attempted to claim UM benefits under the policy in order to recover these expenses.
 {¶ 9} Sexton's insurance carrier contended that a policy provision limiting payment for "all sums which the insured * * * shall be legally entitled to recover as damages from the owner or operator of an insured motor vehicle because of bodily injury sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured motor vehicle" precluded him from receiving UM benefits because he was not personally injured in the accident and his daughter, who sustained the bodily injury, did not reside with him. Id. at 435.
 {¶ 10} The Ohio Supreme Court, in Sexton, at 433-434, held that the policy provision violated the public policy of R.C.3937.18(A), which, at the time, provided, in pertinent part, that:
No automobile liability * * * policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless an equivalent amount of coverage for bodily injury or death is provided therein or supplemental thereto under provisions approved by the superintendent of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom. * * *
 {¶ 11} The court identified the critical issue as whether the insured, Sexton, was legally entitled to recover damages sustained because of bodily injury or death caused by an uninsured motorist. In addressing this issue, the court noted four statutory requirements: (1) there must be an insured; (2) the insured must be legally entitled to recover damages sustained because of injury or death caused by an uninsured motorist; (3) the damages must result from injury, sickness, disease or death; and (4) the tortfeasor must be the owner or operator of an insured motor vehicle. Id. at 434-435.
 {¶ 12} The court found that Sexton's claim met all four statutory requirements. As to the first requirement, the court noted that Sexton was the owner of the policy and was the named insured on the policy. Regarding the second requirement, the court held that the statute did not specifically require that the bodily injury be sustained by an insured. Id. Thus, the relevant question was whether Sexton, as the insured, was legally entitled to recover damages. The court found that he was, as he was legally entitled, under a wrongful death claim, to recover his expenses from the tortfeasor. As to the third requirement, the court noted the damages resulted from the daughter's injury and death. The fourth requirement was satisfied because the tortfeasor was uninsured.
 {¶ 13} The court thus concluded:
R.C. 3937.18(A) protects insureds who are legally entitled to recover damages related to injury or death caused by an uninsured motorist. Sexton meets the statutory requirements and qualifies for uninsured motorist coverage for a financial loss related to his daughter's injuries and death. We hold that the * * * policy restrictions are void because they attempt to limit recovery contrary to R.C. 3937.18.
Id. at 437.
 {¶ 14} Subsequent to the Sexton decision, the General Assembly, in Am.Sub. S.B. No. 20, effective October 20, 1994, amended R.C. 3937.18. The S.B. No. 20 version provided, in relevant part, that:
(A) No automobile liability * * * policy of insurance * * * shall be delivered or issued for delivery in this state * * * unless both of the following coverages are provided to persons insured under the policy for loss due to bodily injury or death suffered by such persons:
(1) Uninsured motorist coverage, which * * * shall provide protection for bodily injury or death * * * for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, suffered by any person insured under the policy.
 {¶ 15} Thereafter, in Moore, supra, the Ohio Supreme Court considered whether the 1994 amendments altered the meaning of R.C. 3937.18 in such a way as to permit insurers to limit uninsured motorist coverage to accidents in which an insured sustains bodily injury. The facts of Moore were nearly identical to those in Sexton. In Moore, Alice Moore's son perished in an automobile accident due to the negligence of an uninsured motorist. At the time of the accident, Moore was the named insured on a policy of automobile liability insurance which included UM/UIM coverage. Moore was not involved in the accident and did not personally sustain bodily injury from the accident. The son did not reside with Moore, was not a named insured on her policy, and was not occupying a vehicle covered under her policy.
 {¶ 16} Moore filed a UM/UIM claim with her insurance carrier for damages arising out of her son's death. After her claim was denied, she filed a lawsuit, asserting that, pursuant to R.C.2125.02, she was presumed to have suffered damages as a result of her son's wrongful death. She further contended she was entitled to compensation for those damages under the UM/UIM portion of her automobile policy. The insurance carrier contended that a policy provision limiting payment for "damages which an `insured' is legally entitled to recover from the owner or operator of an `uninsured motor vehicle' because of `bodily injury' * * * [s]ustained by an `insured' * * * and * * * [c]aused by an accident" precluded her from receiving any UM/UIM benefits, as the son was not an insured under the policy and Moore did not sustain bodily injury as a result of the accident. Moore, at 28.
 {¶ 17} Moore's insurer argued that the plain language of the statute invalidated the Sexton decision. In that regard, the insurer contended that the S.B. No. 20 version of the statute permitted insurers to limit uninsured motorist coverage to automobile accidents in which an insured sustains bodily injury, based on the statutory phrases "suffered by such persons" and "suffered by any person insured under the policy" as they related to the phrase "bodily injury [sickness or disease] or death." The insurer argued that these phrases allowed insurers to require that an insured under a policy of insurance suffer bodily injury, sickness, disease, or death in order for there to be coverage.
 {¶ 18} In contrast, Moore argued that the statute did not permit insurers to limit uninsured motorist coverage to automobile accidents in which an insured suffers bodily injury, based upon her belief that the phrase "suffered by such persons" in section (A) of R.C. 3937.18 referred to "loss" and the phrase "suffered by any person insured under the policy" in subsection (A)(1) referred to "damages" and that neither phrase referred to "bodily injury." Hence, Moore contended that the court's interpretation of R.C. 3937.18 in Sexton was not altered by S.B. No. 20 and was still good law. Accordingly, Moore urged the court to find that the policy limitation requiring that an insured suffer bodily injury in order to recover damages provided less coverage than that mandated by R.C. 3937.18(A) and was therefore invalid.
 {¶ 19} The court found that the statute was ambiguous regarding whether an insurer could limit UM/UIM benefits to accidents in which an insured sustains bodily injury. Having found the statute ambiguous, the court noted that its task was to determine the General Assembly's intent in enacting the statute and to construe the statute in a manner that reflected that intent. Id. at 31.
 {¶ 20} In that regard, the court observed that the purpose of uninsured motorist coverage is to protect persons from losses which, because of a tortfeasor's lack of liability coverage, would otherwise go uncompensated. The court further observed that R.C. 2125.01 recognizes a cause of action for wrongful death and that R.C. 2125.02(A)(1) acknowledges that parents of wrongful death victims are presumed to have suffered damages. Id. The court recognized that, under the insurer's suggested interpretation of the statute, a parent of a wrongful death victim would go uncompensated due to the tortfeasor's uninsured status, notwithstanding the fact that the parent had uninsured motorist coverage. Accordingly, the court declined to adopt the insurer's proposed interpretation, finding that such would thwart the underlying purpose of uninsured motorist insurance and would conflict with R.C. 2125.
 {¶ 21} The court further noted that, if the words "for loss" and "damages" were removed from R.C. 3937.18(A) and (A)(1), the statute would have the meaning suggested by the insurer; thus, the insurer's interpretation of the statute rendered the words "for loss" and "damages" superfluous. Id. The court found that such a result contravened both R.C. 1.47(B) and the court's duty, when determining the legislative intent of a statute, to give effect to the words used in a statute. Id.
 {¶ 22} Pursuant to the foregoing analysis, the court held that R.C. 3937.18(A)(1), as amended by S.B. No. 20, precluded an insurer from limiting uninsured motorist coverage in such a way that the insured must suffer bodily injury, sickness, or disease in order to recover damages from the insurer. Accordingly, the court found that the limitation in the policy requiring that the insured suffer bodily injury in order to recover uninsured motorist benefits was invalid and unenforceable, as it constituted an attempt to provide lesser coverage than that mandated by law.
 {¶ 23} In the instant case, defendant argued, and the trial court agreed, that changes in the statutory language in the H.B. No. 261 version of R.C. 3937.18 cured the ambiguity that concerned the Moore court. The H.B. No. 261 version provides, in pertinent part:
(A) No automobile liability * * * policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless both of the following coverages are offered to persons insured under the policy for loss due to bodily injury or death suffered by such insureds:
(1) Uninsured motorist coverage, which shall * * * provide protection for bodily injury, sickness, or disease, including death * * * for the protection of insureds thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, suffered by any person insured under the policy.
 {¶ 24} Several Ohio appellate cases have summarily found thatMoore is applicable to the H.B. No. 261 version of R.C.3937.18. See Adams v. Crider, Mercer App. No. 10-02-18, 2004-Ohio-535; Aldrich v. Pacific Indemn. Co., Columbiana App. No. 02 CO 54, 2004-Ohio-1546; Kotlarczyk v. State Farm Mut.Auto. Ins. Co., Lucas App. No. L-03-1103, 2004-Ohio-3447;Dickerson v. State Farm Mut. Auto. Ins. Co., Defiance App. No. 4-03-12, 2003-Ohio-6704; Bell v. Currier, Guernsey App. No. 02-CA-10, 2003-Ohio-3294; and Estate of Monnig v. ProgressiveIns. Co., Lawrence App. No. 03CA9, 2004-Ohio-2028. Two other appellate cases, however, have considered the issue raised in this appeal, i.e., whether the ambiguity in the S.B. No. 20 version of R.C. 3937.18 that concerned the Moore court was cured by the H.B. No. 261 amendments to the statute. Those two cases have reached opposite results.
 {¶ 25} In Cincinnati Equitable Ins. Co. v. Wells,
Montgomery App. No. 20286, 2004-Ohio-2418, a case from the Second District Court of Appeals, Patricia Wells' father perished in an automobile accident due to the negligence of an uninsured motorist. At the time of the accident, Wells was the named insured on a policy of automobile liability insurance which included UM/UIM coverage. Wells' father was not a named insured in her policy.
 {¶ 26} Wells sought coverage under her policy's UM/UIM provisions for the losses she suffered arising from her father's death. Her insurance carrier denied coverage, contending that the express terms of the policy restricted the UM/UIM coverage provided to claims for bodily injury or death suffered by insureds themselves. The insurance carrier filed an action to determine its duty of coverage. The issue presented was whether the H.B. No. 261 version of R.C. 3937.18(A) permitted the insurance carrier to restrict UM/UIM coverage to bodily injury suffered by a person who is insured under the policy. The court, at ¶ 13-16, found in the affirmative, stating:
The significance of the 1997 version of the statute to the issue before us is that it requires an offer of UM/UIM coverage in any automobile liability policy covering "bodily injury or death suffered by any person" to be made to a policy's insureds "for loss due to bodily injury or death suffered by such insureds." Id. The CEIC policy at issue employs the words "such insureds." The prior version, which became effective in 1994, ended instead with the words "such persons." The Supreme Court, finding an ambiguity in use of the words "such persons," held that the coverage required applies to bodily injury to any person which results in a legally compensable loss to an insured. Moorev. State Auto. Mut. Ins. Co., 88 Ohio St.3d 27, 2000-Ohio-264.
Application of the Moore interpretation to these facts would require UM/UIM coverage for Wells on her claim for wrongful death: Wells, the insured, suffered a loss due to her father's bodily injury and death. She argues that the Moore analysis should apply, adoption of the new term "such insureds" notwithstanding, because the change from "such persons" is immaterial to the ambiguity which the court in Moore found.
Wells also argues that because uncodified legislation attached to the version of R.C. 3937.18(A) which became effective in September of 2001 expressly superceded Moore and Sexton v.State Farm Mut. Ins. Co. (1982), 69 Ohio St.2d 431,433 N.E.2d 555, on which Moore was based, and the 1997 version adopting the words "such persons" did not, then it should not be inferred that the General Assembly intended to narrow the scope of R.C.3937.18(A) when it adopted the 1997 version. As interpreted byMoore, the words "such persons," as used in the 1994 version R.C. 3937.18(A), modified and referred to individuals who suffer bodily injury or death, not to the insured to whom the policy's liability coverage is provided and to whom the offer of UM/UIM coverage must be made. By adopting instead the words "such insureds," the 1997 version confines the required UM/UIM coverage that must be offered to coverage for claims for bodily injury and death suffered by the person(s) to whom "such insureds" specifically refers, the named insureds. We find no significance in the fact that, unlike the version of R.C. 3937.18(A) that became effective in September of 2001, the 1997 version had no uncodified legislative statement rejecting Moore and its rationale. It could not have, because Moore was not decided until the year 2000.
 {¶ 27} Accordingly, the court determined that the 1997 version of R.C. 3937.18(A) permits coverage to be restricted to losses arising from bodily injury and death which are suffered by a policy's insureds, as the policy at issue expressly did. Thus, since Wells' father was not a named insured under the policy, Wells was not entitled to the benefit of the UM/UIM coverage her policy provided for losses she suffered arising from his death.
 {¶ 28} The Fifth District Court of Appeals reached the opposite result in Bernabei v. The Cincinnati Ins. Cos., Stark App. No. 2002CA00078, 2004-Ohio-4939. In that case, Richard Bernabei was killed in an automobile accident due to the negligence of an underinsured motorist. Bernabei's parents were insured under an automobile policy of insurance which included UM/UIM coverage; Bernabei was not an insured thereunder. The parents filed a declaratory judgment action against the insurance company. The trial court granted summary judgment to the parents on their UM/UIM claims, holding that the 1997 version of R.C.3937.18(A) did not preclude them from recovering funeral and other expenses arising out of the death of their son under the principles set forth in Sexton, supra. The insurance company appealed, arguing that the policy at issue expressly limited UIM benefits to situations in which an insured received bodily injuries and that the 1997 version of R.C. 3937.18(A) permitted such limitation.
 {¶ 29} Noting the Moore court's finding that if the words "for loss" and "damages" were removed from the statute then the statute would allow UM/UIM coverage to be restricted to situations in which an insured has sustained bodily injury or death, the court observed that those words were not deleted from the 1997 version of the statute. The court concluded that, since those words were not removed in the 1997 version of the statute, the Moore holding presumably continued to apply to the 1997 version of the statute.
 {¶ 30} The court rejected the insurance company's contention that the General Assembly's decision, to change the word "persons" to "insureds" at the end of the first full paragraph of R.C. 3937.18(A), completely altered the meaning of the statute with respect to Sexton/Moore claims and could only be interpreted as limiting coverage to insureds who suffer bodily injury or death. The Bernabei court, at ¶ 56-60, explained:
Upon closer analysis of the Ohio Supreme Court's interpretations of prior versions of R.C. § 3937.18(A), it is our opinion that the changes made to the statute in 1997 would not have affected the analysis used in either Sexton or Moore. In both opinions, the Supreme Court held that the statute was remedial legislation and must be construed liberally to provide coverage for persons injured by uninsured and underinsured motorists. Sexton at 434, 433 N.E.2d 555, 23 O.O.3d 385;Moore at 31, 723 N.E.2d 97. Both cases understood that the purpose of the statute was to protect insured persons. * * *
Both cases held that the statute was ambiguous in its use of the phrase "bodily injury or death." Sexton at 434,433 N.E.2d 555, 23 O.O.3d 385; Moore at 31, 723 N.E.2d 97. The phrase "bodily injury or death" could relate to the general type of damages and loss that an insured had sustained, or it could describe a much narrower range of losses that could be compensated, i.e., losses relating to the bodily injury or deathof an insured party. Both Supreme Court opinions chose the former interpretation to resolve the ambiguity, and held that the type of UIM coverage available to an insured must relate to bodily injury or death, but not necessarily the insured's own bodily injury or death.
The same ambiguity occurs in the 1997 version of the statute. The key section of the statute is: "unless both of the following coverages are offered to persons insured under the policy for loss due to bodily injury or death suffered by such insureds." On the one hand, the statute can be interpreted as providing UIM coverage to an insured for loss suffered by the insured, if such loss is somehow related to bodily injury or death. This reading emphasizes the words in the statute in the following way: "unless both of the following coverages are offered to persons insured under the policy for loss due to bodily injury or death suffered by such insureds."
On the other hand, the statute can be interpreted to provide coverage only when an insured has suffered bodily injury or death. This interpretation emphasizes the following words: "unless both of the following coverages are offered to persons insured under the policy for loss due to bodily injury or death suffered by such insureds."
Both of these readings are plausible. Given the choice, the remedial nature of the statute requires an interpretation in favor of granting UIM coverage consistent with Sexton andMoore.
 {¶ 31} Further, recognizing that the Moore opinion noted that the General Assembly published comments to the 1994 revisions of R.C. 3937.18 indicating its intent to overrule the Ohio Supreme Court's holding in Savoie v. Grange Mut. Ins. Co.
(1993), 67 Ohio St.3d 500, the court noted that no similar comments were published with respect to overruling Sexton in 1997.
 {¶ 32} Accordingly, the court concluded that the trial court was correct in applying Sexton and Moore to the 1997 version of R.C. 3937.18(A) applicable to the policy at issue and that the parents were entitled to UIM coverage for losses associated with the death of their son.
 {¶ 33} We believe that the Fifth District's opinion inBernabei is the better reasoned. As noted therein, both theSexton and Moore courts emphasized that R.C. 3937.18 is remedial legislation and, as such, is to be construed liberally to provide coverage to persons injured by uninsured and underinsured motorists. Further, as recognized in Bernabei, the words "loss" and "damages" remain in the 1997 version of the statute. The Moore court found the 1994 version of the statute ambiguous because it was not clear whether the phrases "suffered by such persons" and "suffered by any person insured under the policy" modified, respectively, "loss" and "damages" rather than "bodily injury." We agree with the Bernabei court that the change from "persons" to "insureds" at the end of the last full paragraph of R.C. 3937.18(A) did not cure this ambiguity. Finally, we note that, although Moore had not yet been decided at the time H.B. No. 261 was enacted, Moore's predecessor,Sexton, remained good law, and the General Assembly did not indicate an intention to overrule Sexton.
 {¶ 34} Accordingly, we find that the trial court erred in failing to apply Moore to the 1997 version of R.C. 3937.18(A) applicable to the challenged policy. Defendant contends that, if this court finds Moore applicable to the instant case, Moore
should be overruled because it was "wrongly decided and defies workability." While the Ohio Supreme Court's determination inMoore may well be debatable, it remains the law of this state.
"A court of appeals is bound by and must follow decisions of the Ohio Supreme Court, which are regarded as law unless and until reversed or overruled." Sherman v. Millhon (June 16, 1992), Franklin App. No. 92AP-89, dismissed, jurisdictional motion overruled, 65 Ohio St.3d 1454, 602 N.E.2d 250, citingBattig v. Forshey (1982), 7 Ohio App.3d 72, 454 N.E.2d 168, andThacker v. Bd. of Trustees of Ohio State Univ. (1971),31 Ohio App.2d 17, 285 N.E.2d 380, affirmed (1973), 35 Ohio St.2d 49,298 N.E. 2d 542, overruled in part on other grounds, Schenkolewskiv. Cleveland Metroparks System (1981), 67 Ohio St.2d 31,426 N.E.2d 784, paragraph one of the syllabus. * * *
Corporex Dev. Constr. Mgt. Inc. v. Shook, Inc., Franklin App. No. 03AP-269, 2004-Ohio-2715, at ¶ 25. Accordingly, this court is bound to follow Moore.
 {¶ 35} Having determined that Moore is applicable to the 1997 version of R.C. 3937.18(A) applicable to the challenged policy, we conclude that plaintiff is entitled to UM/UIM coverage for losses associated with the death of her son under both the automobile policy and the umbrella policy. Plaintiff's assignment of error is sustained, and the judgment of the Franklin County Court of Common Pleas is hereby reversed and this cause is remanded to that court for further proceedings in accordance with law and consistent with this opinion.
Judgment reversed and cause remanded.
Bowman and Klatt, JJ., concur.
McCormac, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.