HEDGES, APPELLEE, *v.* NATIONWIDE MUTUAL INSURANCE COMPANY, APPELLANT.

[Cite as *Hedges v. Nationwide Mut. Ins. Co.*, 109 Ohio St.3d 70, 2006-Ohio-1926.]

(Nos. 2005–0193 and 2005–0415—Submitted October 11, 2005—Decided May 3, 2006.)

LANZINGER, J.

{¶ 1} The issue before us is whether the interpretation of R.C. 3937.18(A) in *Moore v. State Auto. Mut. Ins. Co.* (2000), 88 Ohio St.3d 27, 723 N.E.2d 97, is applicable to the version of R.C. 3937.18(A) as amended by Am.Sub.H.B. No. 261, 147 Ohio Laws, Part II, 2372 ("H.B. 261"), effective September 3, 1997. We hold that it is not.

## Facts and Procedural Background

{¶ 2} On January 1, 2001, Bruce Hedges, an Arizona resident, was riding his bicycle just outside Tucson, Arizona. John Leasure Jr., an insured motorist driving a truck, struck Hedges from behind, knocking him off his bike. Bruce died of injuries sustained in the accident. Leasure's insurer paid the limits of his policy, and Bruce's insurer paid damages on a claim for underinsured-motorist ("UIM") coverage. Bruce's mother, Mary Hedges, the appellee, received a portion of those payments. Hedges was an Ohio resident, and on the date of her son's accident, she held an automobile insurance policy and an umbrella insurance policy issued by Nationwide Insurance Company, the appellant. Both policies provided uninsured/underinsured-motorist ("UM/UIM") coverage. The umbrella policy applied to losses covered by the insured's underlying automobile insurance policy. The automobile insurance policy's UM/UIM provision provides that Nationwide "will pay compensatory damages, including derivative claims, which are due by law to you or a relative from the owner or driver of an uninsured [or underinsured] motor vehicle because of bodily injury suffered by you or a relative." The definition of "relative" in Hedges's policy states that a relative is "one who regularly lives in your household and who is related to you by blood, marriage or adoption." By the terms of Hedges's policy, her adult son was not a "relative," because he did not live in her household.

{¶ 3} Hedges submitted a claim for UIM coverage under her automobile insurance policy, claiming that the policy covers the damages she sustained from the nonphysical, personal loss she experienced as a result of her son's death. Nationwide denied benefits, stating that Hedges's claim was not a covered loss. Hedges then filed a complaint in the Common Pleas Court of Franklin County seeking a declaration of her rights under the policies and also asserting claims against Nationwide for breach of contract, fraud, breach of fiduciary duty, conversion, unjust enrichment, and bad-faith breach of contract.

{¶ 4} Both parties filed motions for summary judgment. Hedges requested summary judgment on policy coverage, asserting that this court's decision in *Moore*, 88 Ohio St.3d 27, 723 N.E.2d 97, involved similar facts and circumstances and applied to her claim. *Moore* held that R.C. 3937.18(A) does not permit an insurer to limit uninsured-motorist coverage in such a way that an insured must suffer bodily injury, sickness, or disease to recover damages from the insurer.

{¶ 5} Nationwide argued, in defense, that because *Moore* interpreted an earlier version of R.C. 3937.18(A) as amended by Am.Sub.S.B. No. 20, 145 Ohio Laws, Part I, 204, 210 ("S.B. 20"), *Moore* does not control this case. The version of R.C. 3937.18(A) in effect when Hedges entered her contracts with Nationwide was the version as amended later by H.B. 261. Nationwide contended that the H.B. 261 version of R.C. 3937.18(A) permits an insurer to limit UM/UIM

coverage to accidents in which an insured suffers bodily injury; therefore, Nationwide claimed, Hedges was not entitled to coverage, because she did not meet the bodily injury requirement.

{¶ 6} The trial court granted summary judgment in favor of Nationwide, finding that *Moore* did not apply to the H.B. 261 version of R.C. 3937.18 and that the policy provision at issue restricted UM/UIM coverage to claims for bodily injury suffered only by an insured. Because Hedges did not suffer bodily injury and her son was not an insured under the policy, she was not entitled to UIM coverage under her policies.

{¶ 7} Hedges appealed to the Franklin County Court of Appeals, arguing that the trial court erred in finding *Moore* inapplicable to the circumstances of her case. Relying on *Bernabei v. Cincinnati Ins. Cos.*, Stark App. Nos. 2002CA00073 and 2002CA00078, 2004-Ohio-4939, 2004 WL 2260686, the court of appeals ruled that the trial court had erred. It held that *Moore* applied and that UIM coverage should not have been denied, as the policy provision at issue contravened R.C. 3937.18 by requiring an insured to sustain bodily injury.

{¶ 8} The case is before us upon determination that a conflict exists between the Tenth and Second District Courts of Appeals and pursuant to the acceptance of a discretionary appeal.

{¶ 9} We reverse the judgment and hold that *Moore* does not apply to the version of R.C. 3937.18(A) as amended by H.B. 261.

## Law and Argument

{¶ 10} The Tenth District Court of Appeals has framed the issue in conflict as being whether the Ohio Supreme Court decision in *Moore* is applicable to the version of R.C. 3937.18(A) as amended by H.B. 261. In its discretionary appeal, Nationwide offers two propositions of law. The first asserts that *Moore* does not apply to the H.B. 261 version of R.C. 3937.18, and the second proposes that we overrule *Moore*. To address the first argument, we must discuss the history behind *Moore* and the amendments to R.C. 3937.18.

{¶ 11} This court's decision in *Sexton v. State Farm Mut. Auto. Ins. Co.* (1982), 69 Ohio St.2d 431, 23 O.O.3d 385, 433 N.E.2d 555, preceded *Moore* and was the first case to interpret the version of R.C. 3937.18 that was in effect before the S.B. 20 amendments to the statute. In *Sexton*, Gareld Sexton's 17–year–old daughter was killed by an uninsured motorist. The daughter did not live with Sexton and was not an insured under his policy with State Farm Automobile Insurance Company. Sexton paid $2,300 in medical and funeral expenses related to his daughter's injuries and death. State Farm denied Sexton's claim for these damages. The State Farm policy provided UM coverage for "damages * * * because of bodily injury sustained by the insured." Id. at 432, 23 O.O.3d 385, 433

N.E.2d 555. This court held that because the policy required that an insured suffer bodily injury before receiving UM coverage, it violated R.C. 3937.18(A), as this restriction attempted to limit recovery. Construing the language of R.C. 3937.18, *Sexton* stated, "Although [R.C. 3937.18(A)] does not indicate who must have sustained the bodily injury, it does not specify that it be the insured. Because the statute should be construed liberally, * * * we will not add that limitation." Id. at 434, 23 O.O.3d 385, 433 N.E.2d 555.

{¶ 12} After *Sexton,* the General Assembly amended R.C. 3937.18 several times. The S.B. 20 version, effective October 20, 1994, stated:

{¶ 13} "(A) No automobile liability * * * policy of insurance * * * shall be delivered or issued for delivery in this state * * * unless both of the following coverages are provided to persons insured under the policy for loss due to bodily injury or death suffered by such persons:

{¶ 14} "(1) Uninsured motorist coverage, which * * * shall provide protection for bodily injury or death * * * for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, suffered by any person insured under the policy." 145 Ohio Laws, Part I, 210.

{¶ 15} This court had the opportunity to interpret these amendments to R.C. 3937.18 in *Moore.* Specifically, the court looked at whether the S.B. 20 amendments to R.C. 3937.18(A)(1) allowed insurers to restrict UM/UIM coverage to those accidents in which an insured suffered bodily injury.

{¶ 16} In *Moore,* Alice Moore's son died as a result of an automobile accident caused by an uninsured motorist. Moore was not involved in the accident, her son did not live with her at the time of the accident, and her son was not an insured under her insurance policy with State Automobile Mutual Insurance Company. State Auto denied Moore's claim for damages for her nonphysical, personal loss. The insurance policy limited coverage to "damages which an 'insured' is legally entitled to recover from the owner or operator of an 'uninsured motor vehicle' because of 'bodily injury' * * * [s]ustained by an 'insured' * * * and * * * [c]aused by an accident." *Moore,* 88 Ohio St.3d at 28, 723 N.E.2d 97.

{¶ 17} State Auto argued that the new statutory language permitted the insurer to do what was forbidden before the S.B. 20 amendments: to require that an insured suffer bodily injury in order to receive UM/UIM coverage. Id. at 30, 723 N.E.2d 97. Moore responded by asserting that the words "suffered by such persons" in the S.B. 20 version of the statute referred to "loss" and not to "bodily injury" and that the phrase "suffered by any person insured under the policy" referred to "damages." Id. at 30–31, 723 N.E.2d 97. Moore argued that this court's holding in *Sexton* was unaltered by the S.B. 20 amendments and that the

policy language was invalid because it afforded less coverage than that required by law.

{¶ 18} *Moore* began its analysis by deciding that the statutory language was ambiguous and thus looked to the intent of the General Assembly. The General Assembly's intent in requiring insurers to offer UM/UIM coverage was to protect persons from losses that, because of the tortfeasor's lack of liability coverage, would otherwise go uncompensated.[1] Therefore, the court reasoned that following the insurer's interpretation would thwart the purpose of the UM/UIM statute. Id. at 31, 723 N.E.2d 97. The court held that R.C. 3937.18(A) as amended by S.B. 20 precluded an insurer from limiting UM/UIM coverage in such a way that an insured must suffer bodily injury in order to recover damages. Id. at 32, 723 N.E.2d 97.

{¶ 19} *Moore* interpreted the 1994 version of R.C. 3937.18 as amended by S.B. 20, but R.C. 3937.18 was amended afterward in 1997 by H.B. 261. The certified conflict between the Tenth District Court of Appeals' decision in the underlying case and the Second District Court of Appeals' decision in *Cincinnati Equitable Ins. Co. v. Wells,* Montgomery App. No. 20286, 2004-Ohio-2418, 2004 WL 1072270, presents us with the opportunity to examine the H.B. 261 version of R.C. 3937.18. The H.B. 261 version provided:[2]

{¶ 20} "(A) No automobile liability * * * policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle * * * unless both of the following coverages are *offered* to persons insured under the policy for loss due to bodily injury or death suffered by such *insureds*:

{¶ 21} "(1) Uninsured motorist coverage which * * * shall provide protection for bodily injury, *sickness,* or *disease, including* death * * * for the protection of *insureds* thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, suffered by any person insured under the policy." (Emphasis added to indicate changes made by H.B. 261.)

{¶ 22} In *Cincinnati Equitable,* 2004-Ohio-2418, 2004 WL 1072270, the Second District determined that *Moore* did not apply to the H.B. 261 version of R.C. 3937.18. The court determined that by changing the word "person" to "insured"

---

1. Insurers are no longer required to offer UM/UIM coverage. Am.Sub.S.B. No. 97, 149 Ohio Laws, Part I, 779, effective October 31, 2001.

2. R.C. 3937.18 has been amended since H.B. 261. The statute was most recently amended by Am.Sub.S.B. No. 97, 149 Ohio Laws, Part I, 779, effective October 31, 2001.

in the H.B. 261 version, the General Assembly confined "the required UM/UIM coverage that must be offered to coverage for claims for bodily injury and death suffered by the person(s) to whom 'such insureds' specifically refers, the named insureds." Id. at ¶ 16.

{¶ 23} The Tenth District reached the opposite result, agreeing with the Fifth District's reasoning in *Bernabei v. Cincinnati Ins. Cos.*, 2004-Ohio-4939. In *Bernabei*, the Fifth District acknowledged *Moore*'s holding that R.C. 3937.18 is remedial legislation that should be construed liberally to provide coverage to persons suffering damages caused by uninsured motorists. Id. at ¶ 56. *Bernabei* also noted that *Moore* had found the S.B. 20 version of the statute ambiguous because it was not clear whether the phrases "suffered by such persons" and "suffered by any person insured under the policy" modified "loss" and "damages," respectively, rather than "bodily injury." Id. at ¶ 57. Like the Fifth District in *Bernabei*, the Tenth District concluded that changing the word "persons" in the S.B. 20 version to "insureds" in the H.B. 261 version of the statute did not cure the ambiguity.

{¶ 24} The Second District's analysis comports with the rules of grammar and statutory construction. R.C. 1.42 provides that "[w]ords and phrases [in a statute] shall be read in context and construed according to the rules of grammar and common usage." The rules of grammar are clear that " '[r]eferential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent * * *.' " *Indep. Ins. Agents of Ohio, Inc. v. Fabe* (1992), 63 Ohio St.3d 310, 314, 587 N.E.2d 814, quoting *Carter v. Youngstown* (1946), 146 Ohio St. 203, 209, 32 O.O. 184, 65 N.E.2d 63. In the H.B. 261 version of R.C. 3937.18(A)(1), the phrase "suffered by any person insured under the policy" modifies its antecedent "bodily injury, sickness, or disease, including death." The statute allows insurers to restrict UM/UIM coverage to accidents in which an insured suffers bodily injury, sickness, or disease. Hedges argues that it is unclear whether the phrase "suffered by any person insured under the policy" modifies the phrase "bodily injury, sickness, or disease, including death" or the word "damages." We disagree. The suggestion that the phrase could modify "damages" is not in agreement with the plain meaning of the statute, according to the rules of grammar. Accordingly, we find that the changes to the statutory language in the H.B. 261 version cured the ambiguity that concerned *Moore*.

{¶ 25} We infer that when the General Assembly amended the statute, changing the word "person" to "insured," it intended to clarify that insurers could limit UM/UIM coverage to accidents in which an insured suffers bodily injury. The clear meaning of R.C. 3937.18(A) as amended by H.B. 261 is that a UM/UIM provision may restrict coverage to damages arising from bodily injury to an

insured. Because *Moore* based its analysis on a different version of R.C. 3937.18, we hold that *Moore* does not apply to the H.B. 261 version of R.C. 3937.18.

{¶ 26} Nationwide next urges us to overrule *Moore*. The doctrine of stare decisis provides continuity and predictability in our legal system. In *Westfield Ins. Co. v. Galatis,* 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, we set forth a standard by which to judge whether a past decision should be overruled. According to that standard, an earlier decision of the Ohio Supreme Court may be overruled when "(1) the decision was wrongly decided at that time, or changes in circumstances no longer justify continued adherence to the decision, (2) the decision defies practical workability, and (3) abandoning the precedent would not create an undue hardship for those who have relied upon it." Id. at syllabus.

{¶ 27} Applying the *Galatis* test, we decline to overrule *Moore,* but instead limit *Moore* to insurance contracts governed by the S.B. 20 version of R.C. 3937.18. We cannot say that *Moore* was wrongly decided, for the court did not err in finding the S.B. 20 language at issue in that case to be ambiguous. Furthermore, effective October 31, 2001, to dispel any question of its intent, the General Assembly expressly superseded the holdings of *Moore* and *Sexton* when it enacted Am.Sub.S.B. No. 97, 149 Ohio Laws, Part I, Section 3, 788–790 ("In enacting this act, it is the intent of the General Assembly to * * * supersede the holdings of the Ohio Supreme Court in * * * *Sexton* * * * and [its] progeny"). Overruling *Moore* would have no practical effect in light of this legislative action and our ruling today.

{¶ 28} Accordingly, we hold that the interpretation of R.C. 3937.18(A) in *Moore* applies only to the 1994 S.B. 20 version of the statute. Thus, *Moore* does not apply to the 1997 H.B. 261 version of R.C. 3937.18(A).

Judgment reversed.

MOYER, C.J., LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

RESNICK and PFEIFER, JJ., dissent.

---

ALICE ROBIE RESNICK, J., dissenting.

{¶ 29} I dissent. I believe that the interpretation of R.C. 3937.18(A) reached in *Moore v. State Auto. Mut. Ins. Co.* (2000), 88 Ohio St.3d 27, 723 N.E.2d 97, fully applies to this case. I would affirm the well-reasoned judgment of the court of appeals.

{¶ 30} I disagree with the majority's conclusion that the 1997 amendments to R.C. 3937.18(A) made by Am.Sub.H.B. No. 261, 147 Ohio Laws, Part II, 2372 ("1997 H.B. 261") made *Moore*'s holding inapplicable to this case. In declining to deviate from *Moore*'s analysis, the Tenth District Court of Appeals rightly

followed the same path that has been taken by every appellate district save one that has considered the issue presented.

{¶ 31} In addition to the Tenth District's decision in this case, most other appellate districts that have encountered the issue have squarely determined *Moore* to be applicable when considering the effect of R.C. 3937.18(A) as amended by 1997 H.B. 261 on uninsured/underinsured-motorist ("UM/UIM") policies. See *Adams v. Crider*, Mercer App. Nos. 10–02–18 and 10–02–19, 2004-Ohio-535, 2004 WL 231785 (Third District), appeal not accepted for review, 102 Ohio St.3d 1473, 2004-Ohio-2830, 809 N.E.2d 1159; *Bernabei v. Cincinnati Ins. Cos.*, Stark App. Nos. 2002CA00073 and 2002CA00078, 2004-Ohio-4939, 2004 WL 2260686 (Fifth District), appeal not accepted for review, 105 Ohio St.3d 1439, 2005-Ohio-531, 822 N.E.2d 810; *Kotlarczyk v. State Farm Mut. Auto. Ins. Co.*, Lucas App. No. L–03–1103, 2004-Ohio-3447, 2004 WL 1468336 (Sixth District), appeal not accepted for review, 103 Ohio St.3d 1528, 2004-Ohio-5852, 817 N.E.2d 410; and *Aldrich v. Pacific Indemn. Co.*, Columbiana App. No. 02 CO 54, 2004-Ohio-1546, 2004 WL 614824 (Seventh District).

{¶ 32} I find it noteworthy that a majority of this court denied review in all of the above cases that were appealed here before this one, thus permitting to stand a number of determinations that *Moore* applies to "*Sexton* claims" made under UM/UIM policies governed by the 1997 H.B. 261 version of R.C. 3937.18(A). See *Sexton v. State Farm Mut. Auto. Ins. Co.* (1982), 69 Ohio St.2d 431, 23 O.O.3d 385, 433 N.E.2d 555. The only appellate district that has considered this issue and decided it otherwise was the Second District in *Cincinnati Equitable Ins. Co. v. Wells*, Montgomery App. No. 20286, 2004-Ohio-2418, 2004 WL 1072270, a judgment that was not appealed to this court. The majority adopts the reasoning of that decision, even though districts that have examined the approach taken in *Cincinnati Equitable Ins. Co.* have justifiably declined to follow it.

{¶ 33} As the Tenth District recognized by quoting the Fifth District's *Bernabei* decision at length, that opinion is the best reasoned of all the cases that have considered this issue.

{¶ 34} The *Bernabei* court reasoned:

{¶ 35} "Upon closer analysis of the Ohio Supreme Court's interpretations of prior versions of R.C. § 3937.18(A), it is our opinion that the changes made to the statute in 1997 would not have affected the analysis used in either *Sexton* or *Moore*. In both opinions, the Supreme Court held that the statute was remedial legislation and must be construed liberally to provide coverage for persons injured by uninsured and underinsured motorists. *Sexton* [69 Ohio St.2d] at 434 [23 O.O.3d 385, 433 N.E.2d 555]; *Moore* [88 Ohio St.3d] at 31, 723 N.E.2d 97. Both cases understood that the purpose of the statute was to protect insured persons. * * *

{¶ 36} "Both cases held that the statute was ambiguous in its use of the phrase 'bodily injury or death.' *Sexton* [69 Ohio St.2d] at 434 [23 O.O.3d 385, 433 N.E.2d 555]; *Moore* [88 Ohio St.3d] at 31, 723 N.E.2d 97. The phrase 'bodily injury or death' could relate to the general type of damages and loss that an insured had sustained, or it could describe a much narrower range of losses that could be compensated, i.e., losses relating to the bodily injury or death *of an insured party*. Both Supreme Court opinions chose the former interpretation to resolve the ambiguity, and held that the type of UIM coverage available to an insured must relate to bodily injury or death, but not necessarily the insured's own bodily injury or death.

{¶ 37} "The same ambiguity occurs in the 1997 version of the statute. The key section of the statute is: 'unless both of the following coverages are offered to persons insured under the policy for loss due to bodily injury or death suffered by such insureds.' On the one hand, the statute can be interpreted as providing UIM coverage to an insured for loss suffered by the insured, if such loss is somehow related to bodily injury or death. This reading emphasizes the words in the statute in the following way: 'unless both of the following coverages **are offered to persons insured under the policy for loss** due to bodily injury or death **suffered by such insureds.**'

{¶ 38} "On the other hand, the statute can be interpreted to provide coverage only when an insured has suffered bodily injury or death. This interpretation emphasizes the following words: 'unless both of the following coverages are offered to persons insured under the policy for loss due to **bodily injury or death suffered by such insureds.**'

{¶ 39} "Both of these readings are plausible. Given the choice, the remedial nature of the statute requires an interpretation in favor of granting UIM coverage consistent with *Sexton* and *Moore*." (Emphasis sic.) *Bernabei,* 2004-Ohio-4939, 2004 WL 2260686, at ¶ 56–60.

{¶ 40} In addition to reviewing the *Bernabei* decision, the Tenth District also extensively discussed the Second District's analysis in *Cincinnati Equitable Ins. Co. v. Wells,* 2004-Ohio-2418, 2004 WL 1072270, see *Hedges,* 2004-Ohio-6723, 2004 WL 2896350, at ¶ 25–27, but ultimately found that analysis lacking:

{¶ 41} "We believe that the Fifth District's opinion in *Bernabei* is the better reasoned. As noted therein, both the *Sexton* and *Moore* courts emphasized that R.C. 3937.18 is remedial legislation and, as such, is to be construed liberally to provide coverage to persons injured by uninsured and underinsured motorists. Further, as recognized in *Bernabei,* the words 'loss' and 'damages' remain in the 1997 version of the statute. The *Moore* court found the 1994 version of the statute ambiguous because it was not clear whether the phrases 'suffered by such persons' and 'suffered by any person insured under the policy' modified, respec-

tively, 'loss' and 'damages' rather than 'bodily injury.' We agree with the *Bernabei* court that the change from 'persons' to 'insureds' at the end of the last full paragraph of R.C. 3937.18(A) did not cure this ambiguity. Finally, we note that, although *Moore* had not yet been decided at the time H.B. 261 was enacted, *Moore*'s predecessor, *Sexton*, remained good law, and the General Assembly did not indicate an intention to overrule *Sexton*.

{¶ 42} "Accordingly, we find that the trial court erred in failing to apply *Moore* to the 1997 version of R.C. 3937.18(A) applicable to the challenged policy." *Hedges*, 2004-Ohio-6723, 2004 WL 2896350, at ¶ 33–34.

{¶ 43} The General Assembly stated its explicit intention to supersede *Sexton* and *Moore* in uncodified legislation accompanying amendments to R.C. 3937.18(A) in Sub.S.B. No. 267, 148 Ohio Laws, Part V, 11380, 11385 ("2000 S.B. 267"), effective September 21, 2000. Section 3 of 2000 S.B. 267 provides:

{¶ 44} "It is the intent of the General Assembly in amending division (A) of section 3937.18 of the Revised Code to supersede the holdings of the Ohio Supreme Court in *Sexton v. State Farm Mut. Auto. Ins. Co.* (1982), 69 Ohio St.2d 431 [23 O.O.3d 385, 433 N.E.2d 555] and *Moore v. State Auto. Mut. Ins. Co.* (2000), 88 Ohio St.3d 27 [723 N.E.2d 97] that division (A)(1) of section 3937.18 of the Revised Code does not permit an insurer to limit uninsured or underinsured motorist coverage in such a way that an insured must suffer bodily injury, sickness, death or disease for any other insured to recover from the insurer."

{¶ 45} See, also, Section 3(E) of Am.Sub.S.B. No. 97, 149 Ohio Laws, Part I, 779, 788–790, effective October 31, 2001, in which the General Assembly again explicitly stated its intention "[t]o supersede the holdings of the Ohio Supreme Court in" *Sexton* and its "progeny."

{¶ 46} This case involves the version of R.C. 3937.18(A) as amended by 1997 H.B. 261, not the version as amended by 2000 S.B. 267. In *McDaniel v. Rollins*, Allen App. No. 1–04–82, 2005-Ohio-3079, 2005 WL 1421754, a case involving an insurance policy governed by R.C. 3937.18 as amended by 2000 S.B. 267, the Third District held that that version of R.C. 3937.18 "permits an insurer to limit UM/UIM coverage to instances where the insured suffers bodily injury." Id. at ¶ 29. The Third District in *McDaniel* based its holding on the revised statutory language and on the General Assembly's statement of intent accompanying 2000 S.B. 267.

{¶ 47} To reach that point in its analysis, *McDaniel*, at ¶ 28, summarized why the Third District (along with other districts) had previously determined that the 1997 H.B. 261 amendments to R.C. 3937.18(A) did not accomplish a similar result:

{¶ 48} "R.C. 3937.18 was amended by House Bill 261, effective September 3, 1997. Several appellate courts, including this one, have addressed this amend-

ment to R.C. 3937.18 and found that it did not alter the holdings in either *Sexton* or *Moore*. [*Adams v.*] *Crider* [2004-Ohio-535, 2004 WL 231785] at ¶ 19–21, appeal not allowed by 102 Ohio St.3d 1473, 2004-Ohio-2830 [809 N.E.2d 1159]; *Hedges* [2004-Ohio-6723, 2004 WL 2896350] at ¶ 33–35; *Bernabei v. The Cincinnati Ins. Cos.*, 5th Dist. No. 2002CA00078, 2004-Ohio-4939, 2004 WL 2260686, at ¶ 61–63; *Aldrich v. Pacific Indemn. Co.*, 7th Dist. No. 02 CO 54, 2004-Ohio-1546, 2004 WL 614824, at ¶ 24. Accordingly, this Court has held that the version of R.C. 3937.18 as amended by House [B]ill 261 does not allow insurers to exclude from UM/UIM coverage wrongful death losses that an insured suffers because of an underinsured motorist. *Adams* at ¶ 20. In similar rulings, both the Fifth and the Tenth Districts relied on the fact that the legislature had not removed the words 'for loss' or 'damages' from the 1997 version of the statute and that the legislative comments published with House Bill 261 did not indicate any intention on the part of the legislature to overturn *Sexton*. *Hedges* at ¶ 33; *Bernabei* at ¶ 52–62."

{¶ 49} I fully agree with the cogent reasoning expressed in decisions such as *McDaniel, Bernabei,* and the opinion of the court of appeals in this case. In light of that reasoning, the majority's attempt to distinguish the version of R.C. 3937.18(A) at issue in *Moore* (the version as amended by Am.Sub.S.B. No. 20, 145 Ohio Laws, Part I, 204, 210) from the version at issue in this case (the 1997 H.B. 261 version) by resorting to "rules of grammar and statutory construction" rings hollow. Because the two versions of the statute cannot be so distinguished, *Moore* should apply to this case. Furthermore, because *Moore* was soundly reasoned, this court should reaffirm the rationale of that decision.

PFEIFER, J., concurs in the foregoing dissenting opinion.

---

Smith, Phillips & Associates and Janet L. Phillips, for appellee.

Buckley King, L.P.A., Thomas Blackburn, and Gary A. Gillett, for appellant.